IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DAREK KITLINSKI AND LISA KITLINSKI, <br><br> *Plaintiffs*, <br><br> v. <br><br> JEFFERSON B. SESSIONS, III, et al., <br><br> *Defendants*. | Civil No. 1:16-cv-60 <br><br> Hon. Liam O'Grady <br> Hon. Ivan D. Davis |

## MEMORANDUM OPINION & ORDER

On October 2, this Court granted Defendants' Motion for Summary Judgment (Dkt. No. 101). This memorandum opinion accompanies the Court's Order (Dkt. No. 127).

### I. BACKGROUND

Plaintiffs Darek and Lisa[1] Kitlinski are former employees at the Drug Enforcement Administration ("DEA"). Darek joined DEA in 1998 and Lisa joined in 1997. In 2010, Darek was a supervisory special agent in DEA's San Diego Field Office and Lisa was a supervisor and forensic chemist in the Southwest Laboratory in Vista, California. Lisa subsequently applied for a position as a Program Manager in the Quality Assurance Section of the Office of Forensic Sciences in DEA headquarters in Arlington, Virginia. She was selected for the position effective July 3, 2011. Shortly thereafter, Darek began to apply to DEA's Career Board for a transfer to the Washington, D.C. area pursuant to DEA's Married Core Series Transfer Policy ("MCSTP"). Darek ultimately filed a multitude of transfer requests, which have been addressed at length in the pleadings and in prior Orders of this Court. Thus the Court will not review each job

---

[1] Because both Plaintiffs have the surname "Kitlinski," in the interest of clarity and space, the Court will refer to Plaintiffs by their first names where appropriate.

1

application in detail here. It may be useful, however, to provide brief overview of the circumstances which gave rise to this action.

From March 1, 2011 to June 4, 2014, Darek applied for transfer to the D.C area seven times. Darek filed his first request to transfer on March 1, 2011. The request was denied by the Career Board on April 27, 2011. Darek submitted the transfer request for reconsideration on June 20, 2011. This request was denied by the Career Board on June 29, 2011. On August 2, 2011, Darek submitted an informal Equal Employment Opportunity ("EEO") complaint, claiming that DEA had denied his first two MCSTP requests because of his gender.

On September 1, 2011, Darek filed a formal EEO complaint with DEA, again claiming that DEA had denied his transfer requests due to his gender. The DEA investigated this complaint and issued a decision on June 12, 2012 denying all Darek's claims. Darek appealed the decision to the Office of Federal Operations ("OFO"). On March 9, 2015, the OFO issued a decision finding that DEA had failed to articulate a legitimate, non-discriminatory reason for denying Darek's transfer requests under the MCSTP. OFO denied DEA's request for reconsideration on August 11, 2015.

In January, May, and September of 2012, Darek submitted his third, fourth, and fifth MCSTP requests. The DEA Career Board denied all these requests. Darek subsequently filed an informal EEO complaint, claiming that his fourth and fifth requests were denied because DEA was retaliating against him because of prior protected activity. He alleged that members of the Career Board knew of Darek's protected activity when he submitted his fourth and fifth transfer requests.

In June of 2014, Darek filed another MCSTP request for transfer to Washington, D.C. As part of this application, Darek claimed a need to be transferred under the Rehabilitation Act due

2

to medical hardship. He claimed he had injured his Achilles tendon and needed ongoing care in Washington, D.C. DEA denied this request, concluding that comparable care could be provided for Darek in San Diego. In August 2014, Darek filed an informal complaint of gender discrimination and reprisal based on the denial of this transfer request.

On September 23, 2014, Darek went to DEA Headquarters for a deposition regarding one of his EEO claims. Darek and Lisa traveled together, and parked their car in the DEA Headquarters garage. After the deposition, they returned to their home in Alexandria, Virginia. They claim that when they returned home, Darek discovered a Blackberry cellular telephone wedged under the hood of their vehicle. The phone was ultimately determined to belong to Human Resources Section Chief Donna Rodriguez. Lisa contacted DEA OPR to report the discovered phone. OPR asked Lisa to appear for an interview regarding the phone. Lisa initially refused to appear. When she did appear, she refused to answer questions, asserting marital communication privilege and attorney-client privilege. DEA instructed Darek to appear for an interview regarding the Blackberry, but he refused. Ultimately, the DEA terminated Plaintiffs for their refusal to cooperate with the internal investigation.

Plaintiffs brought this action before this Court in January 2016, alleging a series of violations in eleven counts. This Court previously dismissed Plaintiffs' Counts 2, 8, and 9. *See* Dkt. No. 51 (dismissing Counts 8 and 9); Dkt. No. 53 (dismissing Count 2). On August 1, 2017, Defendants moved for summary judgment on Counts 1, 3-7, 10, and 11.

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists where, after reviewing the record as a whole, a court finds that a

reasonable jury could return a verdict for the nonmoving party." *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2010). "It is an axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* (alteration omitted) (quoting *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (per curiam)) (internal quotation marks omitted). Although the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party, it is ultimately the nonmovant's burden to persuade [the Court] that there is indeed a dispute of material fact." *CoreTel Va., LLC v. Verizon Va., LLC*, 752 F.3d 364, 370 (4th Cir. 2014). That showing requires "more than a scintilla of evidence—and not merely conclusory allegations or speculation—upon which a jury could properly find in its favor." *Id.*

The function of the Court at the summary judgment stage is not to determine the truth of a matter or to weigh credibility, but to determine whether there is any genuine issue of fact that can only properly be resolved by a finder of fact because it could reasonably be resolved in favor of either party. *JKC Holding Co. LLC v. Washington Sport Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). One of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### III. ANALYSIS

As an initial matter, Plaintiffs failed to respond sufficiently to many facts set forth in Defendants' Statement of Undisputed Material Facts. The Local Rules instruct that a party responding to a Motion for Summary Judgment "shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to

4

be litigated and *citing the parts of the record relied on to support the facts alleged to be in dispute.*" Local. Civ. R. 56(B) (emphasis added). In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion. The Fourth Circuit has explained that a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleadings," but must "set forth specific facts showing there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). Additionally, "mere speculation by the non-movant cannot create a genuine issue of material fact." *JKC Holding Co.*, 264 F.3d at 465.

Plaintiffs do not acknowledge, let alone contest, more than a dozen of the material facts identified in Defendants' motion. Facts unacknowledged are deemed admitted. Plaintiffs also superficially contest several facts in Defendants' motion, but cite no record evidence to support the alleged dispute. Facts contested with reference only to Plaintiffs' speculation are deemed admitted. Plaintiffs also purport to contest certain of Defendants' facts, but offer only supplemental information, not contradictory information, in support of their opposition. Facts not truly contested are deemed admitted.

### a. Title VII Claims

Plaintiffs state several causes of action under Title VII, alleging in various counts that Darek was subject to gender discrimination and retaliation for protected activity. Plaintiffs contend that Darek suffered adverse employment actions when he was denied transfers to different positions at the same grade level or position. Further, Plaintiffs contend that Darek was

5

treated differently compared to similarly situated women on the basis of his gender when the DEA denied his transfer requests.

### i. *Title VII Gender Discrimination*

To establish a prima facie case of disparate treatment based on gender, a plaintiff must establish (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) that similarly situated employees outside the protected class received more favorable treatment. *See Gerner v. Cnty of Chesterfield*, 674 F.3d 264, 266 (4th Cir. 2012). Plaintiffs cannot show that Defendants took an adverse employment action against them or that Plaintiffs were treated differently compared to similarly situated employees.

### 1. Transfer as an Adverse Employment Action

To constitute an "adverse employment action," the alleged action must "adversely affect the terms, conditions, or benefits of the plaintiff's employment." *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). An employer's "mere refusal to grant a transfer that an employee desires does not qualify as an adverse employment action unless the decision had some significant detrimental effect on the employee." *Duong v. Bank of Am., N.A.*, No. 1:15-CV-784, 2016 WL 899273, at *3 (E.D. Va. Mar. 2, 2016) (citing *Wagstaff v. City of Durham*, 233 F. Supp. 2d 739, 744 (M.D.N.C. 2002), *aff'd*, 70 Fed. App'x 725 (4th Cir. 2003)); *see also Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 819 (E.D. Va. 2016) ("Title VII protects against adverse employment actions, not all workplace injustices."). Detrimental effects include reduced pay, a diminished opportunity for promotion, less responsibility, or a lower rank. *See id.; see also Stewart v. Ashcroft*, 211 F. Supp. 2d 166, 174-75 (D.D.C. 2002) (holding that a refusal to transfer is not an adverse employment action when wages, promotional opportunity, and job responsibilities remain unaffected).

6

Here, Darek applied only for transfers, as Plaintiffs themselves admit. *See* Dkt. No. 32 at ¶ 32 ("Mr. Kitlinski also alleged that he had been denied certain lateral positions"); ¶ 48 ("all these positions were lateral positions"); ¶ 68 ("Mr. Kitlinski applied for this GS-14, Supervisory position as a lateral transfer"). Plaintiffs have produced no evidence that the denial of those transfers had a significant detrimental effect on Plaintiffs, other than monetary costs incurred because of Plaintiffs' own premature commitment to housing and educational opportunities in the D.C. area. *See* Dkt. No. 113 at 15-16. Although it is unfortunate that Plaintiffs were separated upon Lisa's acceptance of the Virginia position, Plaintiffs' marital status creates no right to geographically adjacent employment. The MCSTP provides that "*To the extent practical, and consistent with the needs of the Agency*, DEA will assign married couples in core occupations . . . to the same metropolitan area." *See* Dkt. 103 at 5; DEX 2 at 9. Plaintiffs were deprived of no right when Darek's transfer requests were denied, and Plaintiffs' resulting separation is not a detrimental effect for purposes of this analysis. Thus, considering the facts on the record, the refusal to transfer Darek to a position in the D.C. area was not an adverse employment action because there was no significant detrimental effect to him.

### 2. Similarly Situated Employees

Plaintiffs have also failed to show a genuine issue of material fact exists as to whether Darek was treated less favorably than similarly situated employees outside the protected class. As Defendants note, the relevant comparators to Darek would be female supervisory core employees, not female core employees generally. *See, e.g., Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (noting that whether employees are "similarly situated" depends on whether the employees were "subject to the same standards," and had "comparable experience, education, and qualifications," and holding that two employees were not similarly

7

situated where they had different levels of experience and job responsibilities); *see also* 45B Am. Jur. 2d Job Discrimination § 941 ("To meet the burden of demonstrating that another employee is similarly situated, a plaintiff must show that there is someone who is directly comparable to the plaintiff in all material respects."). Non-supervisory DEA employees are not similarly situated to supervisory DEA employees like Darek because transfers of supervisors are more difficult to accomplish due to the limited number of supervisory level positions within each DEA field office. *See* Dkt. 103 at 22.

In their Opposition to Defendants' Motion for Summary Judgment, Plaintiffs claim to have identified "supervisory personnel who were granted requests that were primarily if not exclusively female." Dkt. 113 at 17. However, Plaintiffs cite only PEX 17, which is Defendants' Answer & Affirmative Defenses to Plaintiffs' Amended Complaint. Plaintiffs do not explain how this document supports their assertion, and the connection is not clear to the Court. Defendants, in contrast, have provided evidence that between 2011 and 2014, no female supervisory employees received a transfer based on an MCSTP request. *See* DEX 113 at 6. Because Plaintiffs have failed to show genuine issues of material fact as to whether Darek suffered adverse employment action, or as to whether similarly-situated female agents were treated differently, summary judgment for Defendants is appropriate.

Moreover, Plaintiffs failed to provide evidence to contradict the legitimate, non-retaliatory reasons offered by Defendants as explanation for their denial of Darek's requests: that Darek had not yet met the four year field office rotational requirement to be transferred to headquarters, and that other, better qualified candidates had also applied for those positions. *See* Dkt. No. 103 at 21-24. Plaintiffs ostensibly contest Defendants' material facts on this point, but cite only PEX 15 as support: a letter from Darek to his Congressman describing the

circumstances of Darek's request for a transfer to the D.C. area. *See* Dkt. 113 at ¶¶ 7-8. Because this letter is merely Darek's recounting of his version of events, the support does not go beyond the "mere allegations" offered in the pleadings. Plaintiffs describe Defendants' explanation for the denials as "pretextual" and describe the application of general agency policy as "irrelevant" because "the whole purpose of the MCSTP is to address unique situations." *See* Dkt. No. 113 at 18-19. However, Plaintiffs offer not a shred of evidence to substantiate their claims, so a jury could not reasonably decide in Plaintiffs' favor. *Id.*

### ii. *Title VII Retaliation*

Plaintiffs also allege that Defendants violated Title VII by denying Darek's MCSTP requests and his medical hardship transfer requests as a form of retaliation for Darek's prior protected EEO activity. *See* Dkt. 32 at ¶ 257. To establish a prima facie case of retaliation, a plaintiff must show that he (1) engaged in a protected activity under Title VII; (2) his employer acted adversely against him; and (3) there was a causal connection between the protected activity and the adverse action. *See Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008).

Plaintiffs cannot show a causal connection between the protected activity and the allegedly adverse actions, because they have failed to provide evidence to counter Defendants' legitimate, non-retaliatory reasons for denying Darek's many transfer requests. For each vacancy, Defendants have explained why Darek's application was denied (either because the candidate who was ultimately selected had equal or superior qualifications to Darek or, in the case of the medical hardship transfer request, because DEA saw no reason why Darek could not obtain physical therapy services somewhere in California). *See* Dkt. 103 at 27-35; *see also Carrier-Tal v. McHugh*, No. 2:14cv626, 2016 WL 9016633 at *17 (E.D. Va. Apr. 15, 2016) ("[A] company's hiring decision based on an evaluation of the qualifications of competing

9

candidates is entitled to substantial deference."). Plaintiff has failed to cite to record evidence to contest these points. Given the record as it stands, Plaintiffs have failed to show a causal connection between Darek's protected activity and the allegedly adverse actions, and their retaliation claim must fail.

### b. Violation of the Rehabilitation Act

Plaintiffs also allege that Defendants violated the Rehabilitation Act when they denied Darek's transfer request based on medical hardship. *See* Dkt. 32 at ¶¶ 260, 265. In a June 4, 2014 request, Darek requested a job transfer due to medical hardship arising from an injury to his Achilles tendon. *See id.* at ¶ 106. He requested transfer to the Washington, D.C. area to ensure "continuity of specialized medical care" with his D.C.-based orthopedic surgeon. *See* DEX 17 at 83.

To establish a Rehabilitation Act violation, a plaintiff must demonstrate that (1) he qualifies as an "individual with a disability" as defined in 29 U.S.C. § 705(20); (2) that his employer had notice of his disability; (3) that he could perform the essential functions of his job with a reasonable accommodation; and (4) that the employer refused to make any reasonable accommodation. *See* 29 U.S.C. § 794(a); *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 414 (4th Cir. 2015). The plaintiff bears the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable, and an employer may reasonably accommodate an employee without providing the exact accommodation that the employee requested. *Reyazuddin*, 789 F.3d at 415-16. Here, Plaintiffs have failed to show that any genuine issue of material fact remains as to whether the denial of Darek's transfer request constituted a failure to reasonably accommodate. Darek cannot show that it would have been "objectively reasonable" for DEA to transfer him across the country to attend physical therapy. This is

particularly true, as Defendants note, in light of Darek's failure to research treatment options in San Diego. *See* Dkt. 103 at 26; DEX 118 ¶ 11; DEX 5 at 167:25-168:18.

### c. Privacy Act and Freedom of Information Act Claims

Plaintiffs also allege that OIG inappropriately redacted files which the agency produced in response to Plaintiffs' Privacy Act and Freedom of Information Act ("FOIA") requests for "copies of all record (sic) you have in your possession about me." *See* Dkt. 32 at ¶¶ 169-71. In this same claim, Plaintiffs contend that OIG improperly disclosed certain information about Plaintiffs to DEA, in violation of the Privacy Act. *Id.* at ¶¶ 179, 318. Plaintiffs contend that OIG's disclosure prompted the DEA to fire Plaintiffs, thereby causing them to suffer a cognizable harm.

#### i. *Requests for Access to Files*

##### 1. Investigative Files

The Privacy Act provides that "upon request by any individual to gain access to his record . . . permit him . . . to review the record." 5 U.S.C. § 552a(d)(1). The Privacy Act permits plaintiffs to bring a civil action to "enjoin the agency from withholding the records and order the production . . . improperly withheld." *Id.* § 552a(g)(1)(B)(3)(A). Similarly, FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3).

The Privacy Act authorizes agencies to exempt criminal investigative record systems maintained by the agency. *See Aquino v. Stone*, 957 F.2d 139, 141-42 (4th Cir. 1992). The record systems must be maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws. *Id.* Because the OIG's

principal function is law enforcement, it may issue rules exempting investigatory material compiled for law enforcement purposes from disclosure pursuant to the Privacy Act. *See Seldowitz v. Office of Inspector Gen., U.S. Dep't of State*, 238 F.3d 414, 2000 WL 1742098 at *3 (4th Cir. 2000). OIG has properly exempted its investigatory files through proper notice in the Federal Register, therefore has discretion to grant access to investigatory records on a case-by-case basis. *See id.* at *4. OIG acted pursuant to that authority when it permitted Plaintiffs to access some records while redacting certain sections, and Plaintiffs cannot establish a Privacy Act violation in said redactions.

Plaintiffs also claim that Defendants' improper redactions constitute a FOIA violation; Plaintiffs assert that *any* redactions were improper because Plaintiffs requested documents about themselves. Dkt. 32 at ¶ 317. However, courts have made clear that "the identity of the requesting party" and the "purposes for which the request for information is made" have no bearing on the merits of a FOIA request. *See Neely v. FBI*, 208 F.3d 461, 463-64 (4th Cir. 2000). Plaintiffs do not contest this point. *See* Dkt. No. 113 at 34-37. Defendants are thus entitled to summary judgment on the Privacy Act and FOIA claims arising from the allegedly improper redactions.

### 2. Employment Applications

Plaintiffs also seek all of Darek's prior employment records pursuant to the Privacy Act. The Act requires the disclosure of records from a "system of records," from which "information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *See* 5 U.S.C. § 552a(a)(5). Because Darek's applications were archived only in a file system retrievable by the vacancy number of the announcement, and not by his name, they fall outside of the scope of the Act. *See* DEX 114 at ¶¶

3-4; *Paige v. Drug Enforcement Admin.*, 665 F.3d 1355, 1359 (D.C. Cir. 2012) ("A system of records exists only if the information contained within the body of material is both *retrievable* by personal identifier and actually *retrieved* by personal identifier."). Plaintiffs do not contest this fact, but simply suggest that Defendants should have attempted to search for Darek's records anyway. *See* Dkt. No. 113 at 35. This is insufficient to establish a Privacy Act violation.

Moreover, any claim against Defendants for failure to provide Darek's employment applications is mooted by the fact that Plaintiffs received those employment applications as part of discovery. *See* 5 U.S.C. § 552a(g)(3)(A) (the only remedy available for a claim alleging lack of access to Privacy Act-protected records is injunctive relief providing access to the requested records).

### ii. Disclosure of Investigation to DEA

Finally, Plaintiffs have alleged that OIG wrongfully disclosed to DEA Plaintiffs' complaint regarding the Blackberry phone allegedly planted in Plaintiffs' car. Plaintiffs characterize this purported transmission of information as supportive of Plaintiffs' allegations that DEA derailed OIG's efforts to independently investigate Plaintiffs' allegations. *See* Dkt. No. 32 at ¶¶ 312-13.

To state a claim of improper disclosure under the Privacy Act, a plaintiff must prove: (1) a violation of a Privacy Act provision; (2) that the agency's decision was intentional or willful; (3) that the violation caused adverse effects; and (4) that the plaintiff suffered actual damages. *See Thompson v. Dep't of State*, 400 F. Supp. 2d 1, 8 (D.D.C. 2005). Plaintiffs have failed to produce any evidence that OIG informed DEA that Plaintiffs had filed a complaint with OIG before Plaintiffs themselves contacted DEA; indeed, ample record evidence suggests the contrary. *See* DEX 74 at 90:16-91:4; DEX 75 at 34:10-36:18; DEX 79. Because Plaintiffs have

not presented any evidence other than their own speculation to support their claims of Privacy Act violations, no reasonable juror could find in Plaintiffs' favor on this issue. *See* Dkt. 113 at 38-40 (citing to not a single piece of record evidence in support of their allegations that OIG turned over Plaintiffs' Privacy Act information to DEA).

## IV. CONCLUSION

For these reasons, the Court **GRANTED** Defendants' Motion for Summary Judgment (Dkt. No. 101). The time for appeal begins to run upon the filing date of this memorandum opinion.

It is **SO ORDERED.**

November 9, 2017
Alexandria, Virginia

Liam O'Grady
United States District Judge